Robert Ellworth, on behalf of Hyatt Corp. Alright, a couple of things. One is this microphone records, it doesn't amplify, so please keep your voices up. Second of all, you have 20 minutes aside. To the appellees, do you intend to split that or how do you intend to use that? I will present an argument for both the defendants. However, Mr. Ellworth is here and available for any questions you may have specifically related to Hyatt. Alright. And as for you, you have 20 minutes. Would you like to reserve 5 minutes or any? Yeah. For rebuttal. More than I can reserve. No, no more than 10. Alright. You want to reserve 10? I can. You can reserve 10 if you want, but then I'm going to hold you to 10 on your opening argument. Alright. You may have a seat. Thank you, ma'am. And whenever you're ready, please begin. Alright. Your Honors, my client in this case suffered a career-ending injury at age 38. He was a union carpenter and as a result of the back injury he had here, he will never be able to be a carpenter again. One of the things that counsel has argued in their brief is that there was not compelling evidence that a forklift tore up these floor tiles and caused the damage to the tiles. But I would note to you that Dave Herman, who was his co-worker, came running over right after this happened and he fell to the ground. And Dave Herman testified that the tiles were piled up in such a way that that only could have been done by a forklift. Also, the very first medical treater that he went to was Dr. Pacino. And although Dr. Pacino didn't have clear notes that the forklift had torn up the tiles, he did testify that he had an independent recollection that Richard Frula had told him about the forklift tearing up the tiles. So this idea that somehow because the jury found against Mr. Frula that there wasn't good evidence on liability, we just strongly disagree with. The other thing that I would like to talk to the court about is this ruling with respect to the Boykin case. And I think that it's important to look at the actual language from Illinois Supreme Court on that. Because they say, we conclude that if a defendant wishes to introduce evidence that the plaintiff has suffered a prior injury, whether to the same part of the body or not, the defendant must introduce evidence demonstrating that the prior injury is relevant to causation, damages, or some other issue of consequence. It is undisputed in this case that when Judge McCarthy ruled that they could get into that other evidence of prior injury, that he violated that rule because there was no expert testimony. They are not contending that they ever brought an expert in to say that. In fact, the two experts that they relied on, Dr. Bernstein and Dr. Sue, that was retained, both F3s that were hired to come in, not to treat the plaintiff in this case, but just to provide an examination in the case of Dr. Bernstein on behalf of the plaintiff's employer, Renaissance Management, and Dr. Sue, who was hired by Hyatt and Champion to basically do a records review, both of those people testified that all of his prior injuries had nothing to do with it. And yet, Judge McCarthy put me in the situation of saying he was going to allow it in. The language he used was, and I quote him here, it's going to be allowed in because of the whole smorgasbord of other sequelae. Now, I'm not sure that it ever is, but I know that I just lost when he says he's going to allow it in. But doesn't it go to damages and not liability? And since you lost on liability, why does it matter? Well, for one, first of all, I would say a few things about that. First of all, when they call four witnesses that all testified that the people that you've called shouldn't be believed, that's certainly a problem that goes to the integrity of the entire case. And you can get yourself into a situation where the accumulation of errors created a situation where there was not a fair trial, particularly in this case, where Illinois Supreme Court Rule 218C is very clear that you must make all your expert disclosures more than 60 days before trial, which they clearly did not do. And the case law says that I don't have to show prejudice, I don't have to take anybody's doubt, that if they don't disclose these people, they're barred. The Petclock case, the plaintiff disclosed 59 days before trial. The trial court said, no, you can't call the person. It was sent up to the appellate court. The appellate court said, no, the trial court did exactly what they're supposed to do. 60 days is 60 days. And if you've disclosed 59 days before trial, you're too late. The other thing I'd say, too, is one of the experts in this case was a liability expert. Antwone Goldiak in this case, she specifically testified that the plaintiff could have dislodged the title with his own feet. She specifically testifies that he was responsible for his own injuries. She said the form was suitable for use in an exhibit hall. She said the hire was not made aware of the damages in the title to the title at the teardown of the show. And I would point you to the record from pages 1189 to 1203, which is not a lot of pages, but clearly goes to liability in this case. But now, on November 16th, didn't the judge enter an order saying that the defendant would disclose on January 5th, which would be less than 60 days from the March 3rd trial? He said a date on January. He said a date. I apologize. But even January 5th is less than 60 days from March 3rd. Right. And the case law is very clear. But did you object on November 16th? Did you say, hey, that's not your, you know. How many times? I think that the rule could be interpreted that way, that basically I have an obligation to go tell the court that they're going to violate the law. But that's not what the case law says, interpreting that it was a Supreme Court rule. And I'll send you the cases that says it. Marshall says it. Varejo says it. There are a bunch of cases in here that says even if I sit there and say nothing, this is a self-affectuating rule, which is if I say nothing, they have an obligation and I have an obligation to make sure these disclosures on either side are done whether the trial court says to go with your disclosure or not make your disclosure. I mean, there are cases going both ways. There are a number of cases that make it clear that the trial court has discretion, that it's supposed to be interpreted in keeping with substantial justice of the parties, and, you know, that you have some obligation, if not to show prejudice, at the very least to speak up to ask for a continuance, which I don't believe the record reflects you did, correct? You didn't ask for a continuance and say, I don't have my 60 days, Judge. We need to continue this trial. No, I mean, the court set this trial date, and my client had waited a long time for justice, and he wanted his day in court, and he wanted it right away. And they hadn't met their burden. The judge looked at this and asked me, well, did you depose all these people and suggested that somehow Marshall specifically says, I don't have to take any depositions to show any prejudice. I, Your Honor, disagree with your assertion that the cases go both ways on this. I think that with respect to the cases that look specifically at 218C, they all go in the plaintiff's favor. There are some cases out there under 219 that suggest that these are discretionary-type situations where they can decide what kind of sanctions to impose. But under 218C, there is not a single case that suggests that this is discretionary. Every single one of them says that this is a mandatory rule. Are you familiar with City of Chicago v. Eichner? Sure. I am familiar with that. In that case, so here's what happened. And I know what happened was the one lawyer said, well, it's not within 60 days. So what did the trial judge do? She said, fine. She says, we'll continue the trial so you have 60 days. And then the case went to trial more than 60 days after the disclosure had been made. So she accommodated the parties that were complaining about that. But so Eichner doesn't really disagree with the fact that this is mandatory. It says that in a situation like that, that that's one way that the court can remedy it. But that wasn't what was requested in this case. And I specifically said when I stepped up before Judge Axelrod on January 5th, we're not waiving this issue and this is self-perpetuating and it's right in the order. This is not waived. The law says that I don't have to show prejudice. The law says that I don't have to do anything. They have to make disclosures within 60 days before trial. And our disclosures in this case have been made months earlier. In May, I disclosed an economist. I disclosed a billing expert. I disclosed Coldwell on October 18th. So all of our disclosures were made well in advance of that. They had ample opportunity to know what all of our opinions were. And they needed to meet their goals too. And then did you make your last disclosure on December 5th? So here's what I say. Each one of my four expert issued reports. Three of those four reports were attached to my May 2nd disclosure. Then I made the last disclosure was because I saw a 60-day rule coming up and I realized that if they disclosed a vocational rehabilitation expert, that I wouldn't have time to file a rebuttal expert and still be ready for trial. So I decided to amend it so that we wouldn't get into this rebuttal situation, even though 218 specifically talks about rebuttal witnesses being provided for under the schedule. In early May, I disclosed three of those reports. In middle of October, the last one, Coldwell, which was vocational rehabilitation. In each situation, I had no opinions and they didn't testify to any opinions that weren't contained in those reports that were disclosed at those times. Now, they approached me at some point in October and November and said, well, when you disclosed these, you just gave the experts report. You didn't lay out all their opinions. And I said, well, I said what I did in my disclosures, go read the reports which are attached. They said, well, we're not comfortable with that. We don't think that just having you say go read the reports that are attached are good enough disclosures. We want you to cut and paste from the reports and put it into a formal response. So that's what I did for December 6th. There are no – there's one – The trial court told you you had to, didn't they? You didn't just voluntarily. Well, I think – Judge Axelrod, they suggested that they wanted me to cut and paste these into their – I don't remember reading the court report. I don't remember whether he insisted on it or whether I just said, listen, this is not worth arguing about. I'm just going to volunteer and do it. But I can tell you this, that the last report that was given to him on October 16th is the exact opinions he testified to at trial in March. And the three reports that were given in early May were the three opinions that were testified to in March. There was nothing new. I never amended those opinions. I never provided any new information. All I did was shuffle some paper around regarding the disclosures. So 218 is really clear. And I would also point out that Dr. Bornstein is an F3 expert. He is not a treating physician. My client never – Well, that isn't the definition of an F2. An independent expert witness is an expert person given expert testimony who is not a party. Not a party, right? Well, so – No, but this is what it is. He's not a party. He's the party's current employee or the party's retained expert. Right. So these parties – he doesn't qualify under any of those so that he is an independent expert, according to their rules. It's not treaters. It's not just police officers. Okay, those are examples they give in the comments. But I mean – So I'd say two things about that. I think that's an interesting point the Court makes. One is I have seen some people like a police officer that does an accident reconstruction as part of their job on a criminal case being caused in a civil case. That would be an example of somebody still an F2. But the distinction there is they weren't hired to provide opinions just in that case. It was pursuant to their official duties that they're doing those actions. So that's a completely different situation. The other reason that's distinguishing in this case is the person that hired Bernstein in this case was Renaissance Management, my client's employer. And they were the third-party defendant before the jury in this case. So they were a party to this case, and they did retain him. And they had a lawyer that represented them, and the jury found in their favor, and that issue was argued. So they absolutely were. I think that's – And again, this goes on – that particular witness goes on to get damages, correct, as opposed to all the other defendants. Well, you know, basically Bernstein, Dr. Bernstein and Dr. Sue both testified. They testified to a few things. One is they essentially testified to that my client got hurt, but this wasn't a real serious injury and he should basically be fine in a few weeks. The other thing they testified to because Judge McCarthy allowed them to was that the prior injuries that my client had were unrelated to this incident. So there was expert testimony in violation of Voightkin that specifically supported the idea that this wasn't – shouldn't be allowed in. And after the judge started talking about the sequelas and all the different words he used, you know, the important thing to look at is when he said he was going to allow this in, what was he talking about? He was talking about loss of normal life and he was talking about pain and suffering. Why is that important? Because the actual language of the earlier Supreme Court in the Voightkin case says that you need an expert if there's going to be any testimony about prior injuries on the issue of damages. Well, what is loss of normal life? Damages. What is pain and suffering? Damages. So the reality of it is right in the face of the rule, it says you cannot get this in. Basically what the earlier Supreme Court said is we don't want people just to throw stuff out there. And I was in a horrible situation as far as representing my client once the judge makes that ruling because now I'm in a situation having tried, I don't know, 100 jurors or so, I was of the opinion that the worst thing a plaintiff or a plaintiff's lawyer could possibly do is ever to get the jury thinking that you're not fully candid with them. So you confronted the issue. Yeah, I confronted the issue because once they start going, well, you know, didn't she run you on some painkillers just prior to this fall? They're going to be going, like, for what? And I didn't want the jury to have things like that, that they don't hear from anyone other than the defense. If you really want 10 minutes on rebuttal, you're going to have to stop. Okay. I think now might be a good time to take a break, but I would entertain any questions from the court. All right. Good afternoon. May it please the Court. First of all, I'm hearing a lot of what has just been argued to you for the first time. Some of this has not been raised in the briefs. A lot of it's not even in the record about expert witnesses and the comments that we made supposedly about rebuttal, witnesses, et cetera. But here's the main point that we've made, is that the plaintiff's appeal, his post-trial motion and his appeal, is based on alleged errors that had nothing to do with the jury's verdict. All of these witnesses that he's complained of should not have been allowed to testify related to damages. What about Alton Glauwek? Definitely, Your Honor. She did testify as to liability, but here's a couple points with her. First, in his initial brief, the only thing that plaintiffs said about Alton Glauwek is that she was, quote, a mechanical engineer who offered expert opinions concerning liability, period, close quote. That's it. That is not enough to preserve an issue for you to consider. He has not presented in his initial brief any reason why her testimony on liability had any impact on the jury's verdict. Remember, the jury's verdict was not just that the plaintiff was 100% at fault, but that the defendants were 0% at fault. They made two specific findings here. First, the defendants did not breach the standard of care and did not proximately cause the plaintiff's injury. Second, the plaintiff did breach the standard of care and did cause his own injuries, period, end stop. What was Anton Glauwek's testimony? He doesn't tell you that. The only time he brings it up is in his reply brief, but there he misstates what her testimony is, and he misstates what possible impact that might have had on the jury's verdict. She says Anton Glauwek said one of her opinions was that the flooring was suitable. All right. But he points out that she, well, he tries to frame that as if saying that she went on to say that the floor could, the carpet tile could be dislodged if somebody's foot was pushing on it on a certain angle. Contrary to what he just said, she did not say, did not say that the plaintiff dislodged it with his own feet. She would have had no knowledge of that. She would have had no basis for rendering such an opinion. If anything, that testimony undercut her opinion in favor of Hyatt that the flooring was suitable because she was saying it could be dislodged. So she was, that part of her testimony actually is supportive. I think you're kind of shifting the brain here. You guys are claiming every error he raises doesn't matter because it all goes to damages only, so you convince us it only goes to damages. I don't think it's up to him to convince us it goes to liability. You convince us it has nothing to do with liability. Especially, Your Honor, it does require, his burden on appeal is to show error. I understand, but you're saying as to all the errors he raises, harmless, harmless, harmless, doesn't matter because it all goes to damages. I think. Correct. But my point is that he does not show that Anton Goliak's testimony undercut in any way the jury's finding that he was entirely at fault and that the defendants were not at fault. There's no showing, no connection by him between those two things. Certainly not in his opening brief, and he's not supposed to be able to raise new arguments in his reply brief. I'm very concerned about his rebuttal here, Your Honors, because I expect him to raise in that ten minutes many arguments that he didn't address, therefore depriving me, as he did in the briefing, of being able to respond to his arguments. Why don't we assume for a moment that Anton Goliak might have something to do with liability and address the timeliness of your disclosure? Sure. In terms of his first argument is that the 60-day rule, and as you point out, Your Honor, I totally agree with you that there is case law that definitely leaves it to the discretion of the judge, the trial court judge, and that's precisely because of the terms of the rules themselves which require that substantial justice be done between the parties. You cannot have substantial justice if you have a hardened, almost fascistic rule that 60 days is it or else. You have to look at all of the situation here. You have to look at the fact, as Justice Griffin pointed out, that he sandbagged the judge and us by not pointing out that in the very order on November 16th, it's already pointed out to you in his argument that he knew at that point that the 60-day rule was at stake, and yet he didn't raise that as an objection at that time. He let the judge go on. He let us go on. Now, he's one of the arguments he makes. Do you recall whether he ever asked for an extension of the trial date? He did not ask for a continuance of the trial date, Your Honor, and that's the other circumstance that you have to take into account. The cases that he relies on, or I'm sorry, the point is that he didn't ask for that. He didn't try to avoid prejudice. He didn't try to preserve an argument that he was prejudiced by the timing of the expert depositions. He's trying to argue that we had an obligation, in essence, to disclose our own experts at the same time as him, in other words, concurrent rather than consecutive. But that's an experiment that's going on over at that courthouse, Your Honor. There's certain judges over there that do require concurrent, and there are other judges that require consecutive. And that means that it is not an abuse of discretion to allow for consecutive because you have a whole set of rational judges over there allowing consecutive disclosure. And that was the sequence. And that's actually the original plan was that that be done after his experts were deposed. So that undercuts his argument about when his reports were disclosed. So the bottom line is that he knew that was the plan. He knew that was what the judges wanted to do. Judge Exler did. And he essentially laid an ambush by setting up a 60-day violation knowingly without trying to preserve his client's interest. That was a strategic decision that he made, and he should be held to the consequences of it. Now, going on to Bernstein versus Sue, Dr. Sue. First of all, Dr. Bernstein was definitely an F2 witness. F2 is not limited to treaters. It's not limited to police officers. He was indisputably not retained by us. He was retained by his employer, the plaintiff's employer. That should be the end of the discussion. Second, we disclosed him as an expert and his opinions over a year before the trial. Does it really make a difference that there was a two there instead of a three? How is he prejudiced by that?  That's not an error. Third. Was he deposed by the plaintiff? Bernstein? Yes. I did not. Did you recall? I don't recall, Your Honor, but I don't believe so. I know he deposed Sue for limited issues on the question of bias. And again, Your Honor, that was a conscious decision on his part, and a strategic decision to not depose these people, any of the people that were disclosed by us in January of 2017. So that, again, shows that he was not prejudiced by that because he didn't do what he needed to do to show prejudice or to relieve himself of any prejudice that the violation of or alleged violation of the 60-day rule would apply. Now, the other point is that it's within the discretion of the trial court judge, given the context of the disclosures, given the context of the opinions, given the parties involved to decide whether or not to allow cumulative testimony to begin with. Even if their opinions are identical, it's certainly within the discretion of the judge to allow a defendant to present an expert on an opinion and a second defendant to present the same testimony. That should be a strategic decision, depending on that particular counsel's evaluation of the credibility or the presentability of that expert's testimony. They should be allowed that discretion. The trial court judge definitely should also be allowed that discretion to allow that to happen. So the mere fact that even if they were not identical opinions, but even if they were, that would not be an abuse of discretion for the judge to have done that. But they were not the same. They were based on different – the opinions were based on different foundations. One, Dr. Bernstein actually examined the plaintiff and was able to testify based on his examination. Dr. Tsu was basing his opinion on an evaluation of the reports. It was important to have both, in part because Dr. Bernstein would help undercut any notion that they were all just hired guns by us anyway. Yeah, they were retained by Renaissance, but not by us. And they came to – Dr. Bernstein came to his opinion long before the trial of our case and in a totally separate proceeding, not that that ever came up, what that other proceeding was. So it was within the discretion of the court to allow both of those witnesses to testify. And again, he hasn't shown any prejudice from that. That clearly, the fact that two witnesses showed up and presented evidence on damages has nothing to do with the jury's verdict on liability. I want to get to the Voight and Bishop. Thank you. First of all, plaintiff's counsel has mischaracterized the court's ruling. He's mischaracterized the holding in Voight and Bishop. Voight and Bishop says, as he even quoted, it's not just limited – you don't need expert testimony just for purposes of showing causation, which is really what he's arguing about here, is that our experts did not show any link between the prior injuries and the causation of the 2010 injury at issue at trial. What the Supreme Court in Voight and Bishop did say, though, is that we can use expert testimony to show why evidence as to why an injury or health condition is relevant to damages or some other material issue. And contrary to what he's just said, that's exactly what we did, is have our experts say that his condition at the time of the injury, namely his normal life, he was taking six painkillers a day, at least, because that was what his prescription was. So even though plaintiff is testifying during his testimony that he's normal and fine, our experts were saying, no, he wasn't fine. He was taking six painkillers a day before the injury. He maybe had some soft tissue injury for a couple months afterwards, but he quickly reverted back to the exact same condition within a matter of two or three months after the injury where he's again taking six painkillers a day. And that's exactly what Judge McCarthy talked about, was that we have the right under Voight and Bishop to use expert testimony, Dr. Bernstein and Dr. Tsu are both experts, to use that expert testimony to show issues related to damages. Loss of normal life is an element of damages. They were saying he didn't lose his normal life. His normal life was six painkillers a day, both before the injury and within a matter of months after the injury. This injury did not increase or exacerbate an existing condition, other than for those two or three months. So that testimony was directly relevant, and Judge McCarthy was absolutely right under Voight and Bishop to allow us the possibility of presenting that evidence. But here's what's happened, and here's what's important. After Judge McCarthy ruled, now I understand, you know, smorgasbord of sequel, but that's not all he said, okay? He went on at length and repeatedly trying to explain exactly what he was ruling. I think it's very clear based on what he said is that he said, you can't go out there and say that the prior injury caused this existing injury. And we never did. We never even attempted to. He said specifically, you have to show through these experts, Bernstein and Hsu, that his prior condition before the injury is relevant to some issue. And as I just pointed out, we did. Now that was his clear ruling, and based on that, again, Plaintiff's counsel made the strategic decision. He wasn't compelled to do that. He's admitting it's a strategic decision. Even though he says he felt he was obligated to do that for strategic reasons in front of the jury, that's a strategic decision on his part to do that. He wasn't required to do that in response to the court's ruling. In effect, what he did is went way beyond what the court said we could do. He brought in all the details of three or four prior injuries, what he did, what his treatment was. We never intended to get into any of that. And we never even suggested that we would. So he decided to bring all of that out, and now he's trying to claim that he was prejudiced by that. But that's a prejudice. Any prejudice was a consequence of his own decision to do that, not because of the judge's ruling, not because of what we sought to do, which was very, very limited. And, in fact, even though he raised or opened the gate and opened the door to all of those things, when we actually put on our experts, they strictly limited it to what we intended to do from the beginning and what the judge and what Voight then allowed us to do, which is to very limited testimony about prior condition was this. Within two to three months, his condition returned to that. So that was entirely proper. Now, last on this, I know he hasn't raised it, but I wanted to address it, because, again, he raises some new arguments in his reply brief that we didn't have the opportunity to address, which is the collateral source rule. That was not raised. His argument that we somehow violated the collateral source rule was not raised in his motion for new trial at all. Those two words never show up there. What he says is that he didn't contemporaneously object at trial regarding that testimony. He says that he, before the witness Bernstein testified, he raised an objection, but actually the page that he cites, he raised an objection based on his motion in limine number four. I'm sorry, motion in limine number three, but his collateral source rule objection is based on motion in limine number four. So he did not raise the collateral estoppel issue during the trial. He did not raise it in his motion. What he did at the argument on the motion for a new trial was state falsely that Bernstein said he was hired by the workers' compensation carrier. If you actually look at the record, he does not say that. He says he was hired by the employer. No objection on his part to that testimony. And there's no showing in the reply brief, raised for the first time in the reply brief or otherwise, that any testimony from Dr. Bernstein raised the collateral source rule or even suggested in any way that he was somehow paid by workers' compensation. I did want to quickly touch back on Anton Goliak in terms of what she said at her testimony. First of all, at this point, again, if I have any time left, I'll let him address this, but Champion did not retain Anton Goliak, and all she did was point the finger at us. So she definitely did not affect the jury's verdict in favor of us, because if anything, they totally disregarded her testimony as to us. And so there's no way that her testimony helped us in any way. So clearly, as to Champion, he cannot show any prejudice from the alleged errors. Second, even as to her testimony on the opinions about liability and the pages that he cites, what she said was that Hyatt did not know about any condition with the tiles. She said the tiles were appropriate, but also Hyatt did not know about the tiles. And she said she based that testimony on the fact that there were no invoices or no records to show that after this exposition, any tiles were replaced. And then plaintiff's counsel essentially ridiculed her on cross-examination and said, there's already evidence in the record, the fact that there were no invoices. There's already evidence in the record to show that Hyatt did not know about these tiles before or after the accident, the carpet tiles. So my point is that that testimony that she presented is merely a copy of what was already in the fact evidence from other witnesses and other exhibits. So she didn't add anything with regard to that opinion, even as to Hyatt. So again, her testimony had no impact in that regard on the jury's verdict. If there are any questions. Thank you, Your Honor. Thank you, counsel. The record in this case is not what counsel just told you. And there are some specific things where it's very different. First of all, he just got up here and claimed that they retained Dr. Su and Dr. Bernstein to testify and offer evidence that about whether or not the plaintiff being on medication, whether or not that went to his loss of normal life. I defy you to read their reports or read their testimony and reach the conclusion that they had any opinions about whether or not Rich Frula had lost a normal life or whether him being on medication had anything to do with his damages. There was zero evidence about that. What they testified, both of them testified to, is everything that happened before this is irrelevant. Completely irrelevant. It supports exactly the plaintiff's theory about why this shouldn't have come in in the first place. And I defy anybody to look at the record and find any testimony that says what they said it said in Dr. Su's testimony or in Dr. Bernstein's testimony. Do you agree that their testimony related to damages? Yeah. Yes. I mean, the jury found 100% liability on behalf of the plaintiff. Sure. So what difference does it make as far as your appeal because you lost on liability? Where are you going to go if you have no liability? The jury apparently never even got to damages. I'd say a few things about that. I mean, I've personally tried cases where I've lost them, the appellate court's reversed, and then I've gotten a big verdict on the retrial. And the law very much says- You did not appeal the finding of no liability. You are not contesting the jury's evidence in this regard. What I'm contesting is- and have a trial on damages where there's been no liability found? Here's what I'm saying. Here's what I'm saying. I'm saying that the accumulation of errors, which were overwhelming and significant in this case, by allowing five witnesses, all with expertise, to testify against the plaintiff, created a situation where- And what issue against the plaintiff? Well, as I just told you, it was about liability. That's one. That's one. What about the other four? I don't disagree that the other four were largely concerned with damages. Okay, so if you're conceding that they're largely concerned with damages, isn't it incumbent on the appellant to demonstrate that the errors that you're complaining of affected the jury's verdict on liability? Well, I don't know how I would be able to go into the jury room as a litigant and say what they were thinking and how they got to their conclusion. What I'm saying is you have to demonstrate, based on the record, how these witnesses improperly allowed to testify about damages caused the jury or influenced the jury to find, not on damages, they never got to damages, how that testimony related to a finding of 100% liability on behalf of the plaintiff. How do you do that? All right, so let's take the fact that they had an economist and I had an economist. They didn't disclose their economist on time. So if the jury only hears from my economist, the chances that I prevail with that witness are much greater. I think it's- And when you look at the kinds of testimony that they offered, my experts would have been unrebutted to reach the conclusion that there wasn't substantial prejudice by them being allowed to call five people that they shouldn't have been allowed to call, I don't think is warranted. And I would say this, this was a close case on liability even though- Apparently not. The jury found 100% liable in your case.  I think that this was a close case on liability. When Dave Holden, who is the co-worker of my client, comes over and his testimony is within the- Mr. Stitz. You've done nothing in your briefing to contest the finding of the jury that these defendants were not liable to 1% of your client's injuries. They are not liable for that. If there is no liability, there cannot be a finding of damages. But there was testimony here that it was caused by a forklift. Of course there was testimony. And if it was caused by a forklift, they're liable. But the jury found they're not liable. Right, and what I'm saying is that if they were allowed to consider Dr. Caccino's testimony regarding him talking about the tiles being caused by the forklift, allowed to consider Dave Holden's testimony where he comes running over right after this and sees that the tiles have been ripped up by a forklift, and not consider Antoine Goliak's testimony that there isn't liability, they could have very well reached a different conclusion. And that error was compounded by the fact that there was a medical expert, an economist, and a vocational rehabilitation expert that would have been unrebutted had 218C been complied with. But see, 218C, I'm just troubled with this November 16th order. And I look at the comments. Well, first of all, 218C says 60 days for the date of the trial. The trial court reasonably anticipates the trial will commence unless otherwise agreed by the parties. And the comments say the parties may agree to wait or modify the 60-day rule without altering the trial date. So the court says they're going to disclose 57 days before the set trial date. Nobody says anything. It sounds like the parties have agreed to either agreed or modified the disclosures. So here's what I say about that. I don't disagree that the rule could be interpreted that way, but the case doesn't interpret it that way. If you look at the Packard case, the Carlyle case, and the Marshall case, just look at those three cases, and I beg this court to look at every case decided under 218C. It says it's a mandatory, even if I say nothing, if I do nothing, that this disclosure deadline is on me and it's on them. Both sides are subject to this. And if I don't disclose in time, even if the court hasn't entered an order, I lose. And that's what happened in the Carlyle case. And conversely, if they don't disclose, they don't get to do it. I don't have to show prejudice. I don't have to take any depositions. It doesn't matter what the trial court says. If it's less than 60 days before trial, this rule allowed for people to be able to prepare for trial without new disclosures being made. This case was pending for a real long time, and they could have made those disclosures in a timely way. They know the rules. And I don't get how they're basically trying to say that I sandbagged them. I didn't sandbag them. I didn't write Supreme Court Rule 218C. They're on a Supreme Court deadline. I just read it to you that it says you can agree. Right, and we didn't agree. But are you familiar with Gee versus Treese? Gee versus Treese, disclosures less than 60 days before trial does not act as an automatic bar to preserving expert testimony. All of the facts and circumstances surrounding the reasons for the late disclosure must be taken into consideration. And then Shuler versus mid-century, cardiology, the trial court has the discretion to determine whether a disclosure is timely under 218C. You know, it's an abuse of discretion. Judge, here's all I can say. I'm not familiar with those cases. Those aren't cases in their brief. I'd be happy to submit something to the court that addresses them. I personally didn't see a single case decided under 218C that allowed for a late disclosure like they did in this case. And it was pretty clear that this is automatic. And the case law says I don't have to take any doubt. It's presumed that I'm prejudiced by the fact that this disclosure isn't made on time. I'm allowed to get ready for trial, and they're allowed to get ready for trial without having to worry about rude last-minute disclosures. And that's what the rule was created for, made them follow it in this case. I would point out, too, that, you know, they said, well, Dr. Bernstein and Dr. Sue were different kind of experts because Dr. Bernstein examined my client. That was not voluntary. He was forced by the comp carrier, basically the insurance company defending his employer under the Workman's Compensation Act. He was forced to go to that exam. And Dr. Bernstein wasn't providing any care or treatment in this case. He was doing a 215 exam that was likely and turned out to be quite hostile to my client's interests. Both Dr. Sue and Dr. Bernstein are orthopedic surgeons that specialize in spines and had the exact same opinions. You have one minute. So make your best point. Yeah. And to make a rather long and convoluted civil sentence, I would remind this Court that the review order 218C has been no-go. It's not abuse of discretion. We've cited case law along that line. I think that's important that this Court take that into account. I think that my client had been prejudiced, didn't get a fair trial. There was testimony in this case that my client's employer, Renaissance, hired Dr. Bernstein. I don't know what other inference the jury could have made other than the fact that there was a comp case out here where he might have received compensation. That clearly violates the collateral source rule, which I discussed with the judge before he denied our motion for the trial. Thank you, counsel. Based on all of that, we ask that you reverse the amendment for the trial. Thank you. Thank you all for an excellent briefing, and you will get a decision from us shortly. The Court is in recess.